UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

YOUTHDEVELOPMENT CORP., USA,
ERIC EGGLESTON

              Plaintiffs,
v                                                   Case No. 19-12707
                                                    Honorable Thomas L. Ludington
NORTH AMERICA'S BUILDING TRADE UNIONS,

              Defendant.
_____/

**ORDER GRANTING MOTION TO DISMISS AND DISMISSING COMPLAINT**

On September 16, 2019, Plaintiffs Youthdevelopment Corp., USA ("Youthdevelopment") and Eric Eggleston filed a complaint against Defendant North America's Building Trade Unions ("NABTU"). ECF No. 1. Defendant subsequently filed a Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim. ECF No. 8. The motion will be granted for the reasons that follow.

**I.**

Plaintiff Eggleston is African American and is the founder and president of Youthdevelopment. It is a "nonprofit organization whose mission is to assist young men and women who have dropped out of high school in obtaining their diploma and beginning careers in a trade program." ECF No. 1 at PageID.2. It seeks to assist "minority students and those from low-income communities." *Id.* It is domiciled and conducts business in Saginaw, Michigan.

Defendant NABTU is "an organization of national and international building and construction trade unions with its principle place of business and domiciled [*sic*] in the District of Columbia." *Id.* It "sponsors various apprenticeship readiness programs and specifically provides a

'Multi-Craft Core Curriculum' also known as 'MC3.'" *Id.* at PageID.3. The MC3 prepares students to "begin working in apprenticeship programs with various building trade unions." *Id.*

Plaintiffs have furnished a document distributed by Defendant detailing the requirements to receive access to the MC3. It provides:

### North America's Building Trades Unions (NABTU) Multi-Craft Core Curriculum (MC3) Implementation Plan

**To access the Multi-Craft Core Curriculum (MC3), a Building Trades Council or their partner organization(s) must submit an MC3 Implementation Plan to the NABTU Office in Washington DC.**

**The Implementation Plan must answer the following questions:**

- Who will teach the MC3 and where will the program be located?
- Please list all organizations partnering with the Building Trades Council in this ARP?
- How will the program be funded and what is the source of these funds? (Please note: on July 1, 2018 the fee for MC3 access will increase from $75 to $100 per student per class.)
- How many people will be trained and what is the start/end date for the training?
- What is the name of the Council or Council partner representative who will attend the required Train-the-Trainer course, which is designed to prepare coordinators/instructors to set up and teach the MC3? (These Train-the-Trainer classes are offered by the Building Trades Academy - see www.bt-academy.org for the schedule and location of these classes).
- Where and how will successful MC3 graduates, assuming that they meet all other requirements, be placed in Building Trades registered apprenticeship programs?
- How will you track, record, and report in a timely manner MC3 graduates placed in Building Trades registered apprenticeship programs in the area covered by your program?

Once NABTU has approved the MC3 Implementation Plan, the Council or their designee will receive user names and passwords for their instructors to access the MC3, along with specific instructions on using the curriculum. For more infom1ation, contact Thomas Kriger, PhD, NABTU Director of Research (**tkriger@huildingtrades.org**) or Art Lujan, Special Assistant to the NABTU President (**aluja11@,buildi11gtrades.org**).

ECF No. 10-3.

As detailed above, those applying for access to the MC3 must submit an implementation plan and identify a "representative who will attend the required Train-the-Trainer course." *Id.* Defendants developed the Train-the-Trainer course in 2014 which is intended "to prepare instructors to set up and teach the MC3." ECF No. 11-1 at PageID.202. The course is not taught at one physical location. Instead, "instructors for the train-the-trainer course are located throughout the country and NABTU rotates the location of the train-the-trainer classes to accommodate program participants." *Id.* Defendant has offered the course fifty times at locations throughout the country, including two times in Michigan.

One of those offerings was from March 26-28, 2018 at a local union training center in Howell, Michigan. Plaintiffs sponsored two representatives, Yusef Robinson and Aaron Minner, to attend the course. After Robinson and Minner completed the course, Plaintiffs submitted an implementation plan to Defendant. However, Defendant did not grant Plaintiffs access to the MC3.

Plaintiffs claim that they contacted Defendant and spoke with one of Defendant's employees, Melanie Davis. She told Plaintiffs that they needed to contact their local union. Plaintiffs attempted to contact the trade union multiple times, but did not receive a response. Plaintiffs again spoke with Ms. Davis who sent Plaintiffs a document regarding the implementation plan requirement and an intellectual property agreement. Plaintiffs completed both forms and submitted them to Ms. Davis along with Robinson and Minner's Train-the-Trainer course certificates of completion. Ms. Davis confirmed receiving the documents and informed Plaintiffs that the documents had been sent to the Michigan Building Trades Council for review. The Michigan Building Trades Council never contacted Plaintiffs, despite Plaintiffs' continued efforts to communicate with them.

Plaintiffs claim that they completed all the necessary requirements to obtain access to the MC3, but that Defendant refused to grant them access to the curriculum in violation of several laws. Their complaint presents one count of race discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act, one count of race discrimination in violation of the Michigan Equal Accommodations Act, one count of violating the Michigan Consumer Protection Act, one count of breach of contract, one count of promissory estoppel, one count of fraud, and one count of misrepresentation.

## II.

Defendant has now filed a motion under Federal Rule of Civil Procedure 12(b)(2), seeking dismissal for lack of personal jurisdiction. The court may exercise personal jurisdiction over an out-of-state party only after confirming that the state long-arm statute authorizes jurisdiction over the nonresident, and that the exercise of personal jurisdiction would not deny the nonresident the constitutional right to due process of law. *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). The Sixth Circuit has historically "understood Michigan to intend its long-arm statute to extend to the boundaries of the fourteenth amendment." *Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir. 1991). Both parties identify MCL § 600.735 as a Michigan long-arm statute authorizing jurisdiction over a non-resident defendant. ECF No. 8 at PageID.58; ECF No. 10 at PageID.101.

As provided below, personal jurisdiction may be specific or general.

### A.

Specific (or limited) jurisdiction exists "in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum." *Nationwide Mut. Ins. Co. v. Tryg. Intern. Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996). It may only be applied when the

plaintiff's cause of action arises out of the defendant's transactions of business with the forum state. *Id.* at 414 n.8. The Sixth Circuit has adopted a three-part test to determine whether specific personal jurisdiction exists. It provides:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods. & Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 554, 550 (6th Cir. 2007).

Specific personal jurisdiction exists under the Sixth Circuit's three-part test. First, Defendant purposefully availed itself of acting within Michigan when it offered its Train-the-Trainer course in Howell, Michigan from March 26-28, 2018. Second, Plaintiffs' cause of action arises from Defendant's Train-the-Trainer course because Robinson and Minner attended the course in Howell, Michigan. Plaintiffs sponsored Robinson and Minner to complete the course as part of Plaintiffs' application to obtain access to the MC3, which Plaintiffs claim Defendants have unlawfully withheld from them. Third, the Court's exercise of personal jurisdiction over Defendant is reasonable because Defendant's allegedly unlawful refusal to grant Plaintiffs access to the MC3 has prevented Michigan youth associated with Youthdevelopment from accessing the MC3.

Accordingly, specific personal jurisdiction exists.

**B.**

General personal jurisdiction exists if a defendant's contacts with a State "are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). The principles of general jurisdiction are usually

applied when the plaintiff's cause of action is unrelated to the defendant's in-state activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984).

It is unnecessary to determine whether the Court has general personal jurisdiction because specific personal jurisdiction exists. *See Air Prods.*, 503 F.3d at 550 ("Because we ultimately conclude that the district court had specific jurisdiction over Defendants, we focus only on that question and do not reach the question of general jurisdiction.).

### III.

Though personal jurisdiction exists, Plaintiffs' complaint will be dismissed under Federal Rule of Civil Procedure 12(b)(6). A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

### A.

Counts One and Two of Plaintiffs' complaint allege that Defendant violated the Michigan Elliott-Larsen Civil Rights Act and the Michigan Equal Accommodation Act. Defendant argues

- 6 -

that these counts should be dismissed because Defendant is not a "place of public accommodation" pursuant to either statute and Plaintiffs have not pled sufficient facts to link Defendant's actions to racial discrimination.

**1.**

The Michigan Elliott-Larsen Civil Rights Act ("ELCRA") provides that a person may not:

> Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a *place of public accommodation* or public service because of…race…

MCL § 37.2302(a) (emphasis added). ELCRA defines a "place of public accommodation" as:

> [A] business, or an educational, refreshment, entertainment, recreation, health, or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public.

MCL § 37.2301(a).

Defendant contends that it is not a place of public accommodation because it is:

> [A] private organization whose purpose is to promote the interests of its members, *i.e.*, its affiliated unions and their members. As such, access to NABTU's MC3 curriculum is not available to the general public. It is limited to nonprofit training organizations whose implementation plans have been reviewed and approved by "a local building trade council." Thus, NABTU is "not in fact open to the public."

ECF No. 8 at PageID.67-68.

Defendant cites to *Varlesi v. Wayne State University* in which the court held that a Salvation Army drug rehabilitation center was not a place of "public accommodation" because it had a selective process in choosing individuals to participate in its program. 909 F. Supp. 2d 87, 846-48 (E.D. Mich. 2012). Defendant contrasts this case with *Rogers v. International Association of Lions Clubs* in which the court found that the Lions Club was a place of "public accommodation" because it granted membership to every applicant without any screening. 636 F. Supp. 1476, 1479-81 (E.D. Mich. 1986).

- 7 -

Defendant is not a place of public accommodation under ELCRA. Receiving access to the MC3 is a selective process in which only two types of entities are eligible to apply: Building Trades Councils and organizations that have partnered with a Building Trades Council. Additionally, applicants must meet Defendant's specific requirements, including submission of an implementation plan and having a representative complete the Train-the-Trainer course. Even after a Building Trades Council or one of its partner organizations have met these requirements, access to the MC3 is still subject to approval by Defendant.

Defendant is not a place of public accommodation under the ELCRA when its services are only offered to those who meet such a selective process. Accordingly, the first count of Plaintiffs' complaint will be dismissed.

**2.**

The Michigan Equal Accommodation Act ("MEAA") provides in part:

> Any person being an owner, lessee, proprietor, manager, superintendent, agent or employee of any such place who shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities and privileges thereof…on account of race…or that any particular race…is not welcome, objectionable or not acceptable, not desired or solicited…shall be liable to the injured party, in treble damages sustained, to be recovered in a civil action…

M.C.L. 750.147.

The MEAA does not define what constitutes a place of public accommodation, but it does lists various entities that may not discriminate against an individual on the basis of race. It provides:

> All persons within the jurisdiction of this state shall be entitled to full and equal accommodations, advantages, facilities and privileges of inns, hotels, motels, government housing, restaurants, eating houses, barber shops, billiard parlors, stores, public conveyances on land and water, theatres, motion picture houses, public educational institutions, in elevators, on escalators, in all methods of air transportation and all other places of public accommodation, amusement, and

- 8 -

>recreation, subject only to the conditions and limitations established by law and applicable alike to all citizens and to all citizens alike, with uniform prices.

M.C.L. 750.146.

As a nonprofit entity providing a service to only select Building Trade Councils and partners, Defendant is not one of the entities listed above. Furthermore, both parties agree that the Michigan Court of Appeals has indicated that the definition of "place of public accommodation" is the same in the MEAA as it is in the ELCRA. *McKnight v. Don Massey Cadillac, Inc.*, 2001 WL 721384, at *4 n. 21 (Mich. Ct. App. Mar. 2, 2001) ("We assume without deciding that the definition we quote, which comes from [ELCRA] tends to reveal the common understanding of what constitutes a "public accommodation."). As explained above, Defendant is not a place of public accommodation under ELCRA.

Accordingly, the second count of Plaintiffs complaint will be dismissed.

**3.**

In the alternative, Defendant contends that regardless of whether it is deemed a placed of public accommodation under ELCRA or MEAA, Counts 1 and 2 should be dismissed because "Plaintiffs fail to allege sufficient facts to state claim for relief under *Iqbal*." ECF No. 8 at PageID.69. The Court will not address this argument because it has already been determined that Defendant is not a place of public accommodation.

**B.**

Count Three of Plaintiffs' complaint alleges that Defendant violated the Michigan Consumer Protection Act. M.C.L. § 445.901 *et seq.* which prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." M.C.L. § 445.903. In Plaintiffs' response to Defendant's Motion to Dismiss, Plaintiffs "concur in the relief requested by

Defendant as it relates to the Consumer Protection Act claim, Count III only." ECF No. 10 at PageID.108.

Accordingly, Count Three of Plaintiffs' complaint will be dismissed.

## C.

The fourth count of Plaintiffs' complaint alleges that Defendant breached a contract with Plaintiffs. Defendant argues that this count should be dismissed because a contract never existed between Plaintiffs and Defendant.

"In Michigan, the essential elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Thomas v. Leja*, 187 Mich. App. 418, 422 (1991). Absent satisfaction of those elements, mere discussions or negotiations are insufficient to create a contract. *Id.*

Plaintiffs argue that a contract did exist because Defendant offered to provide access to the MC3 if an applicant met two criteria: submission of an Implementation Plan and identifying individuals who completed Defendant's Train-the-Trainer course. ECF No. 10 at PageID.108. Plaintiffs reason that they accepted an offer by Defendant when they submitted their Implementation Plan and Robinson and Minner completed the Train-the-Trainer program.

However, Plaintiffs did not complete at least two other necessary criteria to access the MC3. First, that the applicant is a "Building Trades Council or their partner organization(s)." Second, that Defendant approves the applicant's implementation plan. ECF No. 10-3 ("Once NABTU has approved the MC3 Implementation Plan, the Council or their designee will receive user names and passwords for their instructors to access the MC3, along with specific instructions on using the curriculum."). According to the complaint, Plaintiffs did not meet either of these

additional criteria. Plaintiffs do not claim to be a Building Trades Council or a partner organization nor do they represent that Defendant's approved of their Implementation Plan.

Plaintiffs have not adequately pled a claim for breach of contract. Count Four will be dismissed.

### D.

In the fifth count of their complaint, Plaintiffs alleges promissory estoppel. To establish a claim of promissory estoppel, a plaintiff must demonstrate the following: (1) the existence of a clear and definite promise; (2) the promise is such that the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) the promisee acts or forbears from acting in reliance on the promise; and (4) the promise must be enforced to avoid injustice. *See State Bank of Standish v. Curry,* 500 N.W.2d 104, 107 (Mich. 1993). The doctrine of promissory estoppel must be cautiously applied. *Id*.

Plaintiffs are unable to establish the first element of promissory estoppel. They have not demonstrated that Defendant made a clear and definite promise to grant Plaintiffs access to the MC3. Plaintiffs again argue that all that was required to obtain access to the MC3 was submission of an implementation plan and completion of the Train-the-Trainer course. However, Defendant's notice explicitly states that only Building Trades Councils and partnered organizations whose applications were approved by Defendant were eligible to access the MC3. A conditional statement such as this does not qualify as a promise. *See Fed. Home Loan Mortg. Corp. v. Gilbert*, 656 Fed. Appx. 45, 49 (6th Cir. 2016) (finding no promise where the alleged promisor had informed alleged promisee that she "might qualify").

Accordingly, Count Five of the complaint will be dismissed.

### E.

Count Six of the complaint alleges that Defendant made false representations. Count Seven alleges that Defendants made misrepresentations.

Federal Rule of Civil Procedure 9 requires that when alleging fraud, "a party must state with particularity the circumstances constituting fraud…" Fed. R. Civ. Pr. 9(b). The Sixth Circuit has explained that a complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F.Supp.2d 879, 883 (N.D. Ohio 1998)). "[A] plaintiff must at minimum allege the time, place and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984).

Plaintiffs contend that they pled their claims of fraud with particularity. Their response brief again reiterates their contention that all was required to access the MC3 was submission of an implementation plan and completion of the Train-the-Trainer course. Plaintiffs' brief provides:

> As alleged in Plaintiffs' Complaint, Defendant represented that to obtain access to the MC3 curriculum, an organization must first submit an implementation plan. The organization must also have the individuals who will act as MC3 trainers complete the required Train-the-Trainer course. Then the organization will receive usernames and passwords to access the MC3 curriculum.

ECF No. 10 at PageID.113-14 (citations omitted).

Plaintiffs again neglect to account for the two additional criteria that are explicitly provided for in Defendant's description of the MC3 application process. First, that the applicant must be a "Building Trades Council or their partner organization(s)." ECF No. 10-3. Second, that Defendant approves the applicant's implementation plan. *Id.* Plaintiffs have not represented that either of

- 13 -

these requirements were met. Defendants did not perpetrate fraud by declining to grant Plaintiffs access to the MC3.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss, ECF No. 8, is **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint, ECF No. 1, is **DISMISSED**.

Dated: April 20, 2020    <u>s/Thomas L. Ludington</u>
THOMAS L. LUDINGTON
United States District Judge